700 So.2d 1027 (1997)
Curtis LEFEAUX and Elizabeth and Kelly Lee, each Individually and as Partners in the Community of Acquets and Gains Existing Between Them
v.
Gina TAYLOR; Hamed Ayman; Matta's Transportation Company; Patco Assurance Company; Hertz Corporation, and/or d/b/a Hertz Memphis International Airport.
No. 97-CA-0332.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 1997.
*1028 Robert H. Schmolke, Steven P. Lemoine, Robert H. Schmolke, A Professional Law Corporation, Baton Rouge, for Plaintiffs/Appellants.
Leigh Ann Schell, David P. Curlin, Trinchard & Trinchard, New Orleans, for Defendant/Appellee Patco Assurance Company.
Before BARRY, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
The plaintiffs, Curtis Lefeaux, Kelly Lee and Elizabeth Lee, appeal the summary judgment dismissal of their claim for uninsured/underinsured motorist (UM) coverage against Patco Assurance Company. We affirm.
On April 30, 1995, the plaintiffs were guest passengers in a taxicab which was involved in a vehicular accident with Gina Taylor, an uninsured driver. The plaintiffs sued, among others, the owner of the taxicab, Matta's Transportation Co. (Matta's), and its insurer, Patco. Patco's automobile liability policy provided the statutory minimum limits of liability coverage for bodily injury required under La.Rev.Stat. 45:200.4 of $25,000 per person/$50,000 per accident.
The plaintiffs alleged that the Patco policy included uninsured/underinsured motorist (UM) coverage in amounts equal to the liability limits of the policy, whereas Patco asserted that its insured, Matta's, executed a valid waiver/rejection of the UM coverage. Consequently, the plaintiffs filed a motion for summary judgment contending that Patco's UM waiver form was invalid. Patco filed a cross-motion for summary judgment, denying coverage based upon the UM waiver form executed by Matta's.
After a hearing, the trial judge denied the plaintiffs' motion for summary judgment, granted Patco's motion, and dismissed the plaintiffs' UM coverage claim, finding that the UM coverage waiver executed by Matta's was valid. The plaintiffs appeal, arguing that Patco's UM rejection form is invalid under Louisiana jurisprudence because it is not clear and does not provide the insured with sufficient information to make an informed decision as to whether to accept or reject UM coverage.
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Under La.Code Civ. Proc. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). A dispute as to whether, as a matter of law, an insurance policy provides or precludes coverage to a party can be properly resolved within the framework of a motion for summary judgment. Garcia v. Certified Lloyds Ins. Co., 598 So.2d 1278, 1280 (La.App. 4th Cir.), writ denied, 604 So.2d 969 (La.1992).
The issue in this appeal is whether the execution by Matta's of the form used by Patco was a valid rejection of the UM coverage that would otherwise be provided to the plaintiffs by operation of law pursuant to La.Rev.Stat. 22:1406.
La.Rev.Stat. 22:1406(D) requires insurers to provide uninsured motorist coverage for at least the limits of bodily injury liability coverage provided by the policy. UM coverage is not required when the insured named in the policy rejects the coverage. A valid rejection must be in writing and signed by the named insured or his legal representative. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the applicant the opportunity to make a meaningful selection from the options provided by statute, which are: (1) UM coverage equal to the bodily injury limits in the policy; (2) UM *1029 coverage lower than the bodily injury limits in the policy[1]; or (3) no UM coverage. Tugwell, 609 So.2d at 197.
The purpose of legislation governing UM coverage is to promote full recovery for innocent automobile accident victims by making UM coverage available for their benefit. The statute is to be liberally construed and statutory exceptions to the coverage requirement are to be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to the bodily injury limits or selected lower limits. Id.
In this case, the disputed rejection form provides:
WAIVER OF UNINSURED MOTORIST COVERAGE ENDORSEMENT
In accordance with the provision of Section 1406 of Title 22 of the Louisiana Revised Statutes, Subsection D, which permits you to reject the uninsured motorist insurance or select a limit of such coverage lower than the limit for bodily injury insurance in this policy, the undersigned insured and each of them is hereby rejecting such coverage or select limits of __________O__________ dollars for each person and __________O__________ dollars for each accident for said insurance, being the insurance provided for protection of persons insured under this policy who would legally be entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.
This endorsement is part of your policy. Except for the changes made in the endorsement, all of the terms of the policy remain the same. It is effective at the same time as your policy if issued with the policy. If issued at a later date, then the effective date must be shown.
Patco's policy, to which the above waiver form is attached and refers, contains the following section:
UNINSURED MOTORIST INSURANCE
WE promise to pay the bodily injury damages you are legally entitled to recover from the owner and/or operator of any uninsured motorist. The injury must result from an ACCIDENT caused by the use or maintenance of an UNINSURED MOTOR VEHICLE. If YOU bring a suit to determine legal liability of damages against the owner and/or operator of an alleged uninsured motor vehicle, without OUR written consent, WE will not be bound by any resulting judgement. Even though WE insure you under more than one policy, or more than one vehicle is listed on the DECLARATION PAGE/schedule, and separate premiums are charged for each VEHICLE or policy, these limits will not be increased.
The plaintiffs challenge the waiver executed by Matta's, arguing that it does not meet the legal requirements for a valid waiver because it is ambiguous and failed to provide Matta's with sufficient information to make an informed decision on whether to accept or reject UM coverage. The defect in the Patco policy, the plaintiffs claim, is that it neglects to inform Matta's clearly that UM coverage will be provided by operation of law unless rejected or that Matta's is entitled to full UM coverage. Thus, argue the plaintiffs, Patco's UM rejection "creates the illusion" that the insured has only two options instead of the three options imposed by Tugwell. We disagree.
As Patco points out, the waiver in its policy informs the insured that La.Rev.Stat. 22:1406 allows him to reject "the" UM coverage, and UM insurance is fully described in the body of the policy. The insured is clearly made aware that, if he does not change the policy (i.e. by waiver), the policy provisions *1030 for UM coverage remain in effect. Hence, assuming a requirement to inform the insured of the consequences of failure to reject, that is, that UM coverage is written into the policy by operation of law, in this case there is no reason to inform the insured of this consequence because the policy explicitly provides UM coverage. Reading the waiver in conjunction with the policy, it is apparent that without a rejection, UM coverage is provided. As the supreme court stated in Daigle, "[a]n applicant does not have to sign a separate document opting for coverage already provided in the policy."[2] 691 So.2d at 1216.
In Daigle, the supreme court also observed:
In 1987, La.R.S. 22:1406 D was amended to require that any rejection or selection of lower limits shall be made only "on a form designed by each insurer." Implicit in the legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct.... Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute. It did not do so.
691 So.2d at 1214-1215.
The waiver form Patco used meets the minimum requirements of La.Rev.Stat. 22:1406.
We also reject the plaintiffs' contention that a genuine issue of material fact exists to prohibit summary judgment because Patco failed to introduce evidence such as affidavits to prove that the person who signed the waiver on Matta's policy possessed the necessary authority to execute the waiver on behalf of Matta's or that the signature was authentic. Not only did the plaintiffs fail to make this argument to the district court, but we can find no statutory or jurisprudential support for the argument.
In this case, the UM coverage waiver specifically references the issuer, Patco; the insured, Matta's Transportation Company; and the policy number and its effective date. The signature in the space designated as "SIGNATURE OF INSURED" appears as "S Matta". This is the identical signature found on several other endorsements signed contemporaneously with the UM coverage waiver. These signed endorsements, the declarations page, and the policy were all submitted by Patco to support its motion for summary judgment. The plaintiffs have not shown the existence of a material issue of fact regarding the signing of the UM coverage waiver.
Accordingly, we find no error in the trial court's finding that Patco is entitled to judgment as a matter of law that there was a valid rejection of the UM coverage provided in the policy in question. The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Although the Patco UM waiver form contained this option, selection of this option is foreclosed by law pursuant to La.Rev.Stat. 22:1406(D)(1)(a)(i) because Matta's only purchased the minimum bodily injury liability limits allowable. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213. Thus, Patco's policy provided an option not actually available to Matta's by law.
[2] In Daigle, the court was explaining that any affirmative signature or mark accepting coverage would be mere surplusage, since the coverage is automatically extended by operation of law. In the instant case, UM coverage is provided in the policy.